```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
TROY THOMPSON,                                  :
                                                :
                        Petitioner,             :
                                                :
        -v.-                                    :
                                                :
JANET NAPOLITANO, et al.,                       :
                                                :
                        Respondents.            :
-----------------------------------------------------------------x
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/5/14

**REPORT AND RECOMMENDATION**

13 Civ. 9126 (LTS) (JLC)

**JAMES L. COTT, United States Magistrate Judge.**

To The Honorable Laura Taylor Swain, United States District Judge:

## I. INTRODUCTION

Petitioner Troy Thompson seeks a writ of habeas corpus, pursuant to 28 U.S.C. § 2241, challenging his July 26, 2013 detention by United States Immigration and Customs Enforcement ("ICE" or "the Government"). Thompson has been detained pursuant to § 236(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1226(c), which requires mandatory detention for certain criminal aliens for the duration of their removal proceedings.[1] In his petition, Thompson argues that he is not subject to § 1226(c) and therefore is being detained in violation of the statute and his right to due process. Accordingly, Thompson seeks a prompt individualized bond hearing. In addition to challenging his detention, Thompson also asserts a claim of ineffective assistance of counsel. For the reasons set forth below, I recommend that Thompson's petition be granted and, should that recommendation be adopted, that the

---

[1] The mandatory detention statute was passed by Congress as § 236(c) of the INA and is codified at 8 U.S.C. § 1226(c). The record cites the relevant provision as both § 236(c) and § 1226(c). For ease of reference, I will refer to it as § 1226(c).

USDC SDNY
DATE SCANNED 5/5/14

1

Government be directed to provide Thompson with an individualized bond hearing within 10 days of the date of the district court's decision.

## II. BACKGROUND

### A. Factual Background

Thompson is a native and citizen of Jamaica. Thompson's Petition for Writ of Habeas Corpus ("Pet.") (Dkt. No. 1), ¶ 15; Respondents' Memorandum of Law in Opposition to Petition for Writ of Habeas Corpus ("Resp. Mem.") (Dkt. No. 7), at 3. He has been a lawful permanent resident of the United States since January 27, 1996. Id. Thompson is engaged to be married and has a daughter who was born in the United States in 2009, as well as a son from a prior relationship. Pet., ¶¶ 17-19. At the time he was taken into immigration custody, he was employed and, he alleges, recently promoted to a supervisory position. Id., ¶ 17.

### 1. Thompson's Criminal History

On September 27, 2000, Thompson pled guilty in New York state court to attempted criminal sale of a controlled substance (cocaine) in the third degree and was sentenced to a prison term of two to ten years. Resp. Mem., at 3; Return to Habeas Petition ("Return") dated March 11, 2014 (Dkt. No. 8), Exhibit ("Ex.") 2. Thereafter, on May 13, 2002, Thompson pled guilty before Judge Colleen McMahon of this Court to four counts of distribution and possession with the intent to distribute crack cocaine in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(C). Return, Ex. 3. Thompson was sentenced to 71 months imprisonment, to run concurrently with the undischarged portion of the New York state sentence that he was serving at the time of his conviction in federal court. Id. Thompson was released from custody on supervised release on July 9, 2007. Id., Ex. 4.[2]

---

[2] In his reply papers, Thompson contends for the first time that while he was still incarcerated in federal prison in Florida in 2007, ICE agents visited him and stated that he was a United States

On March 17, 2013, Thompson was arrested for operating a motor vehicle while impaired by drugs and unlawful possession of marijuana. Id., Ex. 1.

### 2. Facts Underlying Thompson's Detention and Charges for Removal

After Thompson's March 2013 arrest, the New York State Police referred him to ICE. Id. On or about May 22, 2013, ICE prepared a Notice to Appear ("NTA") charging that, on the basis of his state and federal narcotics convictions, Thompson was subject to removal pursuant to: (1) 8 U.S.C. § 1227(a)(2)(A)(iii), for having been convicted of two aggravated felonies, specifically an offense related to illicit trafficking in a controlled substance and an offense pertaining to an attempt or conspiracy to commit a drug trafficking crime; and (2) 8 U.S.C. § 1227(a)(2)(B)(i), for having been convicted of a violation relating to a controlled substance. Resp. Mem., at 4; Return, Ex. 5. Based on these charges, ICE determined that Thompson was subject to mandatory detention under § 1226(c). Resp. Mem., at 4; Return, Ex. 8.

### 3. Thompson's Custody Review and Removal Proceedings

ICE commenced removal proceedings against Thompson by serving him with the NTA on July 26, 2013 and taking him into custody at the Orange County Jail in Goshen, New York that same day. Resp. Mem. at 4; Return, Ex. 5, 6.[3] Thompson sought review of ICE's custody determination, and on November 15, 2013, the Immigration Judge assigned to his case determined that Thompson was not eligible for release on bond because he was subject to

---

citizen and accordingly lifted a detainer against him. Petitioner's Reply Brief In Support of Petition ("Pet. Reply") (Dkt. No. 11), at 3. There is nothing in the record before the Court to support this allegation.

[3] Thompson's petition alleges he was taken into custody on July 23, 2013. Pet., ¶ 5. The difference is not material for purposes of adjudicating the petition. In addition, the ICE Record of Deportable/Inadmissible Alien indicates that Thompson was arrested on July 26, 2013 at the Ulster County Jail in Kingston, New York. Return, Ex. 1. There is no explanation in the record as to why Thompson was in state custody at that time.

3

mandatory detention. Resp. Mem., at 4; Return, Ex. 8. There is no record of Thompson taking any appeal from this determination. Id.

On February 11, 2014, the Immigration Judge ordered Thompson removed to Jamaica. Return, Ex. 9. Thompson's appeal of the removal order is pending. Resp. Mem. at 4, n.4.[4]

### B. The Instant Petition

On December 17, 2013, Thompson filed a petition for habeas corpus pursuant to 28 U.S.C. § 2241, seeking immediate release from custody under reasonable conditions of supervision or, in the alternative, a bail hearing at which Respondents must demonstrate that his

---

[4] Thompson remains subject to § 1226(c) until his order of removal becomes administratively final and his "removal period" begins. See 8 U.S.C. § 1231(a)(1)(B)(i); Wang v. Ashcroft, 320 F.3d 130, 146 (2d Cir. 2003) (§ 1226(c) "governs the detention of aliens against whom the Government has initiated removal proceedings, but whose removal periods have not yet commenced"). An order of removal becomes final when one of several dates occurs, including if: (1) the BIA dismisses the appeal; (2) the petitioner waives his appeal; or (3) the allotted time for an appeal expires and the petitioner does not file an appeal. See 8 C.F.R. § 1241.1. Thompson had 30 days from the date of the removal order to appeal to the BIA, which he has done. See 8 C.F.R. § 1003.38.

If the BIA dismisses Thompson's appeal and a final order of removal is entered against him, he may appeal that decision to the Second Circuit. See 8 U.S.C. § 1252(b) (providing that an alien may petition for review of final removal order with court of appeals in judicial circuit in which immigration proceedings occurred). Then, if the Second Circuit enters a stay of the removal proceedings pending review, he will still be subject to detention under § 1226(c). See e.g., Wang, 320 F.3d at 147 ("'[I]f the removal order is judicially reviewed and if a court orders a stay of the removal of the alien [pending review],' then the removal period begins on 'the date of the court's final order.' Accordingly, where a court issues a stay pending its review of an administrative removal order, the alien continues to be detained under [§ 1226(c)] until the court renders its decision.") (quoting 8 U.S.C. § 1231(a)(1)(B)(ii)). However, the stay would have to pertain to a direct petition for review of the removal order, as opposed to his § 2241 petition, given that the Second Circuit in Wang rejected the argument that "where an alien has an administratively [final] removal order but is pursuing habeas review, his detention is pursuant to [§ 1226(c)]." Id.; see also Reyes-Cardenas v. Gonzales, No. 05 Civ. 5687 (KMW) (RLE), 2007 WL 1290141, at *2 (S.D.N.Y. Apr. 27, 2007). Thus, because Thompson's appeal is pending before the BIA, and he may still challenge any removal order before the Second Circuit, his habeas petition is not rendered moot by the immigration judge's removal order.

4

continued detention is justified. Pet., at 25.[5] Specifically, he alleges that Respondents "have been holding [him] without an opportunity for an individual bond hearing based on the erroneous assertion that he is subject to mandatory detention." Pet., ¶ 21. He separately alleges that he was denied his constitutional right to the effective assistance of counsel, specifically the attorney in his federal case failed to advise him of the immigration consequences of his guilty plea. Id. at ¶¶ 38-54. The petition was referred to me for a Report and Recommendation on February 10, 2014, and I subsequently directed that the Government file a response addressing whether Thompson's detention complied with statutory and constitutional law. See Orders (Dkt. Nos. 5, 6).

The Government filed its response on March 11, 2014, principally dedicating its opposition papers to advancing an interpretation of § 1226(c) that would allow immigration authorities to arrest aliens deemed deportable at any time after they are released from criminal custody and, subsequently, to subject them to mandatory detention without a hearing. Resp. Mem., at 5-19.

Thompson filed his reply papers in support of his habeas petition on April 4, 2014. In his Reply, he reiterates arguments made in his original petition and expands on the contention that § 1226(c) requires ICE to detain an alien immediately upon release from criminal custody. Pet. Reply, at 2-9.

---

[5] The petition was filed on ECF on December 31, 2013, but under the prison-mailbox rule, a petition is considered "filed" by a pro se prisoner on the date it is given to a prison official for mailing. Houston v. Lack, 487 U.S. 266, 276 (1988). Thompson's petition does not provide the date on which it was given to prison officials for mailing, but it was signed on December 17, 2013. I therefore infer that Thompson submitted it to prison officials on that day as well. See, e.g., Peralta v. Connelly, No. 06 Civ. 5360 (DAB) (MHD), 2008 WL 8050791, at *7 n.16 (S.D.N.Y. Apr. 18, 2008).

5

### III. DISCUSSION

#### A. Jurisdiction

As a threshold matter, this Court has subject matter jurisdiction over Thompson's petition pursuant to § 2241. See 28 U.S.C. § 2241(c)(3); Zadvydas v. Davis, 533 U.S. 678, 687 (2001). Although § 1226 states that "[t]he Attorney General's discretionary judgment regarding the application of this section shall not be subject to review," 8 U.S.C. § 1226(e), the Supreme Court has held that this provision does not deprive district courts of jurisdiction to hear petitions where, as here, the petitioner challenges the interpretation of "the statutory framework that permits his detention without bail." Demore v. Kim, 538 U.S. 510, 517 (2003).[6]

#### B. Proper Parties

The Government contends that the only proper respondent to the petition is Carl E. Dubois ("Dubois"), Orange County Sheriff and Facility Director of the Orange County detention facility in Goshen, New York where Thompson is currently in custody. Resp. Mem., at 1 n.2 (citing Rumsfeld v. Padilla, 542 U.S. 426, 447 (2004)).

In Padilla, the Supreme Court affirmed that the proper habeas respondent to a "core" habeas petition – one that challenges the petitioner's present physical confinement – is the individual "with the ability to produce the prisoner's body before the habeas court." 542 U.S. at 435. This individual is generally the warden of the facility where the prisoner is being held, because he has "immediate custody" over the prisoner, as opposed to "the Attorney General or some other remote supervisory official." Id. The Padilla Court explicitly declined to resolve the issue of "whether the Attorney General is a proper respondent to a habeas petition filed by an

---

[6] "Administrative exhaustion is not statutorily required in detention cases" of this kind, Louisaire v. Muller, 758 F. Supp. 2d 229, 234 (S.D.N.Y. 2010), and is not at issue here. See Resp. Mem., at 4, n.3 (Government acknowledges Thompson did not need to exhaust "futile administrative remedies prior to seeking review in this Court").

6

alien detained pending deportation." Id. at 435 n.8. However, a majority of courts in this Circuit has applied Padilla's "immediate custodian" rule in such cases, finding that the proper respondent to habeas petitions filed by incarcerated aliens challenging their physical confinement prior to deportation is the warden of the facility where the petitioner is detained. See, e.g., Santana v. Muller, No. 12 Civ. 430 (PAC), 2012 WL 951768, at *2 (S.D.N.Y. Mar. 21, 2012); Guo v. Napolitano, No. 09 Civ. 3023 (PGG), 2009 WL 2840400, at *3 (S.D.N.Y. Sept. 2, 2009); Catellanos v. Mukasey, No. 08 Civ. 2583 (SJF), 2008 WL 4185700, at *3 (E.D.N.Y. Sept. 8, 2008); Drakoulis v. Ashcroft, 356 F. Supp. 2d 367, 370-71 (S.D.N.Y. 2005); but see Farez-Espinoza v. Chertoff, 600 F. Supp. 2d 488, 494 (S.D.N.Y. 2009) (Attorney General and Secretary of DHS proper respondents).

Here, where Thompson is contesting his present detention, the Court is persuaded by the reasoning of the majority view with regard to the applicability of the immediate custodian rule, finding it likely that Dubois is the only proper respondent in this case.[7] However, because the Government "has not argued that dismissal of the other respondents would obviate the need to resolve the merits issue presented" – whether Thompson is being properly held pursuant to § 1226(c) – the Court declines to reach the question as to whether any additional respondents are also proper parties. Straker v. Jones, __ F. Supp. 2d __, 2013 WL 6476889, at *16 n.1 (S.D.N.Y. Dec. 10, 2013).

### C. Thompson Should Be Given an Individualized Bond Hearing

This case requires interpretation of a statute that has recently become the subject of much debate among the federal courts: § 1226(c). Specifically at issue here is § 1226(c)'s requirement that ICE take certain aliens, including those, like Thompson, who are deportable for having been

---

[7] The Government has acknowledged that Dubois is a proper respondent, thus conceding that he is the individual with immediate custody over Debel. Resp. Mem., at 1 n.2.

convicted of one of various enumerated offenses, into immigration custody "when the alien is released" from criminal custody.[8] The statute does not provide for an individualized bond hearing for such aliens, and instead requires that they be detained throughout the pendency of their removal proceedings. Aliens not subject to mandatory detention pursuant to § 1226(c) fall under § 1226(a), which entitles them to individual bond determinations.[9]

Whether ICE can mandatorily detain an alien under § 1226(c) hinges on the interpretation of the phrase "when the alien is released." 8 U.S.C. § 1226(c)(1). The Second Circuit has not yet opined on the issue and courts are divided as to its meaning. See Gomez v. Napolitano, No. 11–2682, 2012 U.S. App. LEXIS 27076, at *1-2 (2d Cir. 2012) (recognizing that "the proper

---

[8] The text of § 1226(c)(1) is as follows:

The Attorney General shall take into custody any alien who –

(A) is inadmissible by reason of having committed any offense covered in § 1182(a)(2) of this title,

(B) is deportable by reason of having committed any offense covered in § 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,

(C) is deportable under § 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentenced to a term of imprisonment of at least 1 year, or

(D) is inadmissible under § 1182(a)(3)(B) of this title or deportable under § 1227(a)(4)(B) of this title,

when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

Section 1226(c)(2), which sets forth certain conditions for release applying only to a very limited category of aliens, is not implicated in Thompson's case.

[9] The mandatory detention authority is derived from the language of § 1226(c)(1), which is distinguishable from § 1226(a). While § 1226(a) provides that an alien "may be arrested and detained" or "may be released" on bond or parole, § 1226(c) requires that certain aliens "shall" be taken into custody. See Wang, 320 F.3d at 147 n.25 ("[F]or most aliens convicted of crimes, detention prior to the removal period is mandatory under [the statute].").

8

interpretation of [§ 1226(c)] is a weighty question, unresolved in this Circuit," but dismissing appeal as moot because petitioner was no longer detained under mandatory detention provision). Although no federal appellate court has so held, many courts in this District and beyond have held that the statute unambiguously provides that ICE may only subject an alien to mandatory detention if it detains him immediately at or around the time he is released from criminal custody for the underlying offense. See, e.g., Louisaire, 758 F. Supp. 2d at 236; Monestime v. Reilly, 704 F. Supp. 2d 453, 458 (S.D.N.Y. 2010); Olmos v. Holder, 2014 WL 222343, at *6 (D. Colo. Jan. 17, 2014); Rosciszewski v. Adducci, __ F. Supp. 2d __, 2013 WL 6098553, at *5 (E.D. Mich. Nov. 14, 2013); Castaneda v. Souza, 952 F. Supp. 2d 307, 316-17 (D. Mass. 2013); Espinoza v. Aitken, 2013 WL 1087492, at *6 (N.D. Cal. March 13, 2013). Thompson urges the Court to adopt this interpretation. Pet., ¶¶ 21-29; Pet. Reply, 2-9.

Other courts have found the "when . . . released" clause ambiguous as to whether it requires immediate detention upon release from criminal custody or, conversely, whether it simply identifies the time at which ICE's duty to detain first arises. See, e.g., Hosh v. Lucero, 680 F.3d 375, 378–84 (4th Cir. 2012). Still others have held that the statute's ambiguity is immaterial because the text makes clear that immigration authorities do not lose the authority to mandatorily detain an alien without bail when they delay in taking him into custody. See, e.g., Sylvain v. Attorney Gen. of U.S., 714 F.3d 150, 156–61 (3d Cir. 2013). The Board of Immigration Appeals ("BIA") addressed this issue in Matter of Rojas, where it found § 1226(c) ambiguous and adopted an interpretation of the statute allowing ICE to mandatorily detain an alien even if it does not take him into immigration custody immediately after he has been released from criminal custody. 23 I. & N. Dec. 117, 125 (BIA 2001).

This Court was recently presented with this issue in Debel v. DuBois, No. 13 Civ. 6028 (LTS) (JLC), 2014 WL 708556 (S.D.N.Y. Feb. 25, 2014). Rather than repeat my entire analysis in that case, I incorporate it by reference here, and present only a brief summary. In Debel, I concluded that § 1226(c) was ambiguous, but that deference to the BIA's decision in Rojas was not warranted. Debel, 2014 WL 708556, at *6-10. In particular, I found that the BIA's failure in Rojas to impose any temporal limitation as to when an alien can be mandatorily detained was unreasonable and that Debel, who had been at been at liberty for more than four years before he was detained, was entitled to a bond hearing. Id. at *10-11. I further found that to follow the BIA's decision in Rojas would mean that immigration authorities "could wait ten, twenty, or thirty years, if they wished, before detaining an alien without any right to a bail hearing, even when the alien had lived an exemplary life for all those decades." Id. at *11 (quoting Gordon v. Johnson, __ F. Supp. 2d __, 2013 WL 6905352, at *8 (D. Mass. Dec. 31, 2013)). I concluded that result was "patently unreasonable" and "inconsistent with a fundamental principle underlying our system of justice: except in the rarest of circumstances, the state may not postpone action to deprive an individual of his or her liberty indefinitely." Id. (quoting Gordon, 2013 WL 6905352, at *8). While I acknowledged that a reasonable amount of time should be afforded to ICE in its efforts to detain a recently released alien, I determined that "it would be 'arbitrary, capricious, [and] manifestly contrary to the statute' to allow immigration authorities to detain a law-abiding alien who has re-integrated into his community several years after his release without any opportunity for a bail hearing." Id. (quoting Chevron, U.S.A., Inc. v. National Resources Defense Council, Inc., 467 U.S. 837, 844 (1984)).

However, the Government filed objections to my Report and Recommendation in Debel and Judge Swain, the district judge to whom the instant petition is also assigned, declined to

10

adopt my Report and denied Debel's petition. Debel v. DuBois, 2014 WL 1689042 (S.D.N.Y. Apr. 24, 2014). While Judge Swain agreed that § 1226(c) was ambiguous, she concluded that the BIA's decision in Rojas merited Chevron deference and its interpretation of the statute must be adopted. Id. at *4. In denying Debel's petition, Judge Swain found that, while "Congress could logically have placed the burden on ICE to prove that criminal aliens who have demonstrated responsible community behavior over long periods of time pose sufficient risks of danger and flight that they must be detained during removal proceedings, the legislative history of § 1226(c) indicates that Congress made a different, permissible, policy choice." Id.

Thompson's petition presents a similar set of facts to those presented by Debel. Thompson was released from federal custody on July 9, 2007 and was not taken into custody by ICE until July 26, 2013, more than six years later. While I recognize that a different result is unlikely here given Judge Swain's decision in Debel, it is nonetheless not binding on me (nor on her). See, e.g., Camreta v. Greene, 131 S. Ct. 2020, 2033 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.") (citing 18 JAMES WM MOORE ET AL., MOORE'S FEDERAL PRACTICE § 134.02[1][d] at 134-26 (3d ed. 2013)); In re Oxford Health Plans, Inc. Secs. Litig., 244 F. Supp. 2d 247, 249 (S.D.N.Y. 2003) (same). Accordingly, for the same reasons I recommended that Debel's petition be granted, I recommend that Thompson's petition be granted and that he be given an individualized bond hearing.[10]

---

[10] I note that since Judge Swain's decision in Debel, Magistrate Judge Peck of this Court, on consent, issued a decision in Lora v. Shanahan, 2014 WL 1673129 (S.D.N.Y. Apr. 29, 2014), in which he construed § 1226(c) in a manner consistent with my Report in Debel and concluded that an alien who was not taken into custody for more than four years after his arrest and release on bail was entitled to an individualized bond hearing. I assume the Government will appeal this decision, and that the Second Circuit will then be squarely presented with the issue. I also note that, unlike Debel and Thompson, who are proceeding pro se, Lora is represented by counsel.

### D. Thompson's Claim of Prolonged Detention Does Not Provide an Independent Basis for Habeas Relief

Thompson separately objects to his mandatory detention as prolonged beyond what is authorized by the statute and as a violation of due process. Pet., ¶¶ 30-36. While the Supreme Court in Demore upheld the constitutionality of § 1226(c), determining that "[d]etention during removal proceedings is a constitutionally permissible part of that process," it qualified that mandatory detention should be "limited," 538 U.S. at 526, 531, and "temporary." Id. at 530 n.13. The Court in Demore further noted that "the detention at stake under § 1226(c) lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal." Id. at 530.

It is true that Demore, which affirmed a "somewhat longer than [ ] average" detention of six months, "did not set a bright-line outer limit for what constitutes a permissible period of detention." Johnson v. Orsino, 942 F. Supp. 2d 396, 409 (S.D.N.Y. 2013). However, multiple courts of appeals, as well as district courts within the Second Circuit, have held that "[a]t a certain point, continued detention becomes unreasonable and the [ ] implementation of § 1226(c) becomes unconstitutional unless the Government has justified its actions at a hearing inquiring into whether continued detention is consistent with the law's purposes of preventing flight and dangers to the community." Diop v. ICE/Homeland Sec., 656 F.3d 221, 232 (3d Cir. 2011). Accord Rodriguez v. Robbins, 715 F.3d 1127, 1137 (9th Cir. 2013); Hussain v. Mukasey, 510 F.3d 739, 743 (7th Cir. 2007); Ly v. Hansen, 351 F.3d 263, 268 (6th Cir. 2003); Monestime, 704 F. Supp. 2d at 458; Scarlett v. U.S. Dep't of Homeland Sec. Bureau of Immigration and Customs Enforcement, 632 F. Supp. 2d 214, 221-23 (W.D.N.Y. 2009).

While Demore affirmed a detention of six months, 538 U.S. at 530-31, "courts in this circuit have upheld periods of detention [that were much longer in length than Thompson's]."

12

Johnson, 942 F. Supp. 2d at 409 (upholding detention of 15 months); Adler v. U.S. Dep't of Homeland Sec., No. 09 Civ. 4093 (SAS), 2009 WL 3029328, at *2 (S.D.N.Y. Sept. 22, 2009) (same); Johnson v. Phillips, No. 10CV480A, 2010 WL 6512350, at *6-*7 (W.D.N.Y. Dec. 20, 2010) (upholding detention of 17 months), Report and Recommendation, adopted by 2011 WL 1465448 (W.D.N.Y. April 18, 2011); Andreenko v. Holder, No. 09 Civ. 8535 (CM) (JCF), 2010 WL 2900363, at *3-*4 (S.D.N.Y. Jun. 25, 2010) (upholding detention of 17 months), Report and Recommendation, adopted by No. 09 Civ. 8535 (CM) (JCF), Dkt. No. 30, (S.D.N.Y. Oct. 26, 2010).

In analyzing the length of the detention, the Court should "consider[ ] factors such as which party bears responsibility for the prolonged detention, whether the continued duration of the detention is finite or near conclusion, and the interests served by continued detention." Johnson, 942 F. Supp. 2d at 409. Here, Thompson was detained for approximately seven months (July, 2013 to February, 2014) before the immigration judge ordered him removed. Given that the order of removal has issued and there are no impediments to his deportation, Thompson will only face continued detention if he continues to challenge the removal order. See, e.g., Johnson, 942 F. Supp. 2d at 409 (finding no due process violation where "[t]he sole reason that [petitioner] continues to be in ICE custody is the fact that [he] chose to appeal the IJ's removal order").

Thus, given the current length of detention and the fact that Thompson is already in administrative appellate proceedings, the Court does not believe that Thompson's detention currently violates his due process rights. However, there could come a time that continued indefinite detention without a bond hearing will raise substantial constitutional concerns. See Demore, 538 U.S. at 528; Zadvydas, 533 U.S. at 690 ("A statute permitting indefinite detention

13

of an alien would raise a serious constitutional problem."). Accordingly, while Thompson's due process claim is presently without merit, it should be rejected without prejudice to a further petition should circumstances change. See, e.g., Chavez-Alvarez v. Sabol, 2014 WL 257357, at *6 (M.D. Pa. Jan. 22, 2014) ("[T]here remain temporal limits on the duration of pre-removal detentions which the courts will tolerate. Thus, courts generally agree that where the period of pre-removal detention exceeds two years, some form of bail individualized consideration is typically mandated.").

### E. Thompson's Ineffective Assistance of Counsel Claim Is Not Properly Before The Court on a Petition Brought Pursuant to 28 U.S.C. § 2241

Finally, Thompson has alleged that he was denied his constitutional right to the effective assistance of counsel during his 2002 guilty plea in his criminal proceedings in federal court. Pet., ¶¶ 37-54. The Government argues that this claim is not properly before the Court and is not determinative of Thompson's removability or detention status. Resp. Mem., at 21-22. I agree with the Government.

To start, a collateral attack on the legality of Thompson's sentence is properly brought through a petition under 28 U.S.C. § 2255, not 28 U.S.C. § 2241. See, e.g., Poindexter v. Nash, 333 F.3d 372, 377-78 (2d Cir. 2003). An ineffective assistance of counsel claim such as the one that Thompson advances here is traditionally brought either on direct appeal or in a petition pursuant to 28 U.S.C. § 2255 after sentencing. See, e.g., United States v. Gonzalez, No. 00 Cr. 447 (DLC), 2001 WL 987866, at *1-2 (S.D.N.Y. Aug. 30, 2001). "[I]t is not customary to attack the legality of a conviction through a Section 2241 petition." Id. at *2. Rather, a § 2241 petition typically challenges "such matters as the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention and prison conditions." Id. at *2 (quoting Jiminian v. Nash, 245 F.3d 144, 146 (2d Cir. 2001)); see

14

also Poindexter, 333 F.3d at 377 ("Despite their overlapping language and the generality of § 2241, the two sections [sections 2241 and 2255] have been construed as 'address[ing] different types of claims.'") (quoting Chambers v. United States, 106 F.3d 472, 475 (2d Cir. 1997)). A petition under § 2241 may only be filed where a remedy under § 2255 would be inadequate. Id. There is nothing before the Court to establish that a petition under § 2255 before the sentencing court (in this case, Judge McMahon) is not the proper vehicle for such an attack on Thompson's guilty plea (other than that it is likely to be found untimely).

In addition, as the Government correctly observes, Thompson's ineffective assistance of counsel claims are not determinative of his removability or his detention under § 1226(c) because his removal proceedings are premised not only on his 2002 federal court conviction but also on his prior state conviction in 2000.

## IV.   CONCLUSION

For the foregoing reasons, I recommend that the Court grant Thompson's petition for habeas relief and, if the Court agrees, direct the Government to provide Thompson with an individualized bond hearing within 10 days of the Order adopting this Report and Recommendation.

### PROCEDURE FOR FILING OBJECTIONS
### TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Laura Taylor Swain and the undersigned, United States Courthouse, 500 Pearl Street, New York,

New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Swain.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. See Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010). If Thompson does not have access to cases cited herein that are reported on Westlaw or Lexis, he should request copies from Respondents. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

Dated: New York, New York
       May 5, 2014

/s/ James L. Cott
JAMES L. COTT
United States Magistrate Judge

A Copy of this Report and Recommendation has been mailed to:

Troy Thompson
044-859-115
Orange County Jail
110 Wells Farm Road
Goshen, NY 10924

16